**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| ANDREZJ BOBEL, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 12 C 5346 |
| v. | ) | |
| | ) | |
| MAXLITE, INC. f/k/a SK AMERICA, INC., | ) | |
| | ) | |
| Defendant. | ) | |

**REDACTED MEMORANDUM OPINION AND ORDER**

AMY J. ST. EVE, District Court Judge

        Plaintiff Andrzej Bobel ("Bobel") alleges that Defendant MaxLite, Inc. ("MaxLite")

infringed its patent for compact flourescent lamps.  Before the Court is MaxLite's motion for

partial summary judgment on both counts of the First Amended Complaint.[1]  (R. 19, Sum. Jgmt,

Mot.)  For the following reasons, the Court grants MaxLite's motion on both Counts I and II, as

they pertain to MaxLite's purchase of dimmable CFL's from Lux Electronic Products ("Lux").

**BACKGROUND**

**I.      Northern District of Illinois Local Rule 56.1**

        "For litigants appearing in the Northern District of Illinois, the Rule 56.1 statement is a

critical, and required, component of a litigant's response to a motion for summary judgment.

The purpose of the local rule is to make the summary judgment process less burdensome on

district courts, by requiring the parties to nail down the relevant facts and the way they propose

---

        [1] Bobel filed the First Amended Complaint on December 14, 2012, after filing its
summary judgment motion.  (R. 53, Amend. Compl.)  MaxLite stated in open court on December
10, 2012, however, that the Court's order granting Bobel's motion for leave for leave to file the
First Amended Complaint would not alter its summary judgment motion.

to support them." *Sojka v. Bovis Lend Lease, Inc.*, 686 F.3d 394, 398 (7th Cir. 2012). Local Rule 56.1 assists the Court by "organizing the evidence, identifying undisputed facts, and demonstrating precisely how each side propose[s] to prove a disputed fact with admissible evidence." *Bordelon v. Chi. Sch. Reform Bd. of Trs.*, 233 F.3d 524, 527 (7th Cir. 2000). "The Rule is designed, in part, to aid the district court, 'which does not have the advantage of the parties' familiarity with the record and often cannot afford to spend the time combing the record to locate the relevant information,' in determining whether a trial is necessary." *Delapaz v. Richardson*, 634 F.3d 895, 899 (7th Cir. 2011) (citation omitted).

Local Rule 56.1(a)(3) requires the moving party to provide "a statement of material facts as to which the moving party contends there is no genuine issue." *Cracco v. Vitran Exp., Inc.*, 559 F.3d 625, 632 (7th Cir. 2009). "The opposing party is required to file 'a response to each numbered paragraph in the moving party's statement, including, in the case of any disagreement, specific references to the affidavits, parts of the record, and other supporting materials relied upon.'" *Id.* (citing N.D. Ill. R. 56.1(b)(3)(B)). Pursuant to the Local Rules, the Court will not consider any additional facts proposed in the nonmoving party's Local Rule 56.1(b)(3)(B) response, but must rely on the nonmovant's Local Rule 56.1(b)(3)(C) statement of additional facts. *See Ciomber v. Coop. Plus, Inc.*, 527 F.3d 635, 643 (7th Cir. 2008). The Court disregards Rule 56.1 statements and responses that do not cite to specific portions of the record, as well as those that contain factual or legal argument. *See Cracco*, 559 F.3d at 632 ("When a responding party's statement fails to dispute the facts set forth in the moving party's statement in the manner dictated by the rule, those facts are deemed admitted for purposes of the motion."); *Cady v. Sheahan*, 467 F.3d 1057, 1060 (7th Cir. 2006) ("statement of material facts did [] not comply

with Rule 56.1 as it failed to adequately cite the record and was filled with irrelevant information, legal arguments, and conjecture"); *Bordelon*, 233 F.3d at 528 (the requirements for responses under Local Rule 56.1 are "not satisfied by evasive denials that do not fairly meet the substance of the material facts asserted"); *Cichon v. Exelon Generation Co., L.L.C.*, 401 F.3d 803, 809-10 (7th Cir. 2005) ("A district court does not abuse its discretion when, in imposing a penalty for a litigant's non-compliance with Local Rule 56.1, the court chooses to ignore and not consider the additional facts that a litigant has proposed.").

Notably, Bobel proposed only five uncontested facts. (R. 36, Pl.s' 56.1 Resp. at 20-21.) Additionally, many of Bobel's objections to MaxLite's facts relate not to the underlying facts, but to a temporal issue regarding Michael Moison's ("Moison") ownership of Lux Electronic Products. (*See, e.g., Id.* ¶¶ 13, 14, 22, 23.) Specifically, Bobel disputes the lack of temporal limitation in some of MaxLite's facts. To clarify this issue, MaxLite submitted a supplemental affidavit from Moison stating that he has had more than 50% ownership in Lux since it incorporated on January 11, 2002. (R. 41-1, Def.'s Reply, Ex. K, Supp. Moison Aff. ¶ 4.)

Bobel also disputes many of MaxLite's facts relating to MaxLite purchasing lights from Lux, however, Bobel fails to provide specific evidence to refute these facts. (*Id.* ¶¶ 15, 21, 24-35.) Rather than directing the Court to specific pages of documents to refute MaxLite's facts, Bobel cites to seven exhibits to support the broad statement that "the record shows that MaxLite did not purchase product from Lux. Instead it purchases product from [a] Chinese Manufacturer named Shanghai Chuan Shih . . . Customs records further confirm that MaxLite purchases product from Shanghai Chuan Shih." (*Id.*) These exhibits consist of over a hundred pages, including emails between Bobel's lawyers, custom forms and packing lists from Chinese

manufacturer Shanghai Chuan-Shih, and MaxLite emails, without descriptions of who the emails are between or their significance. (R. 35, Pl's. Resp. Exs. D, F, G, H, I, J and K.) The Court disregards Rule 56.1 statements and responses that do not cite to specific portions of the record, in part because "[d]istrict courts are not obliged to scour the record looking for facts to support their arguments." *Padilla v. Bailey*, No. 09 C 8068, 2011 WL 3045991, at \*2 (N.D. Ill. July 25, 2011) (citing *Cracco*, 559 F.3d at 632); *see also Estate of Moreland v. Dieter*, 395 F.3d 747, 759 (7th Cir. 2005) ("We will not scour a record to locate evidence supporting a party's legal argument."); *Cracco*, 559 F.3d at 632 ("When a responding party's statement fails to dispute the facts set forth in the moving party's statement in the manner dictated by the rule, those facts are deemed admitted for purposes of the motion."); *Cady v. Sheahan*, 467 F.3d 1057, 1060 (7th Cir. 2006) ("statement of material facts did [] not comply with Rule 56.1 as it failed to adequately cite the record and was filled with irrelevant information, legal arguments, and conjecture"); *Bordelon v. Chi. School Reform Bd. of Trustees*, 233 F.3d 524, 528 (7th Cir. 2000) (the requirements for responses under Local Rule 56.1 are "not satisfied by evasive denials that do not fairly meet the substance of the material facts asserted"). As such, for the particular statements of fact that contain such a response without any additional citation, the Court deems those facts admitted for the purposes of this motion. *See Cracco*, 559 F.3d at 632; *see also Sojka*, 686 F.3d at 398 ("The obligation set forth in Local Rule 56.1 'is not a mere formality.' Rather, '[i]t follows from the obligation imposed by Fed. R. Civ. P. 56(e) on the party opposing summary judgment to identify specific facts that establish a genuine issue for trial.'") (quoting *Delapaz v. Richardson*, 634 F.3d 895, 899 (7th Cir. 2011) (internal citations omitted)).

4

## II.      Factual Background

Andrezj Bobel ("Bobel") owns United States Patent No. 5,434,480 (the "'480 Patent"),

entitled "Electronic Device For Powering a Gas Discharge Load From a Low Frequency

Source." (the "'480 (R. 53, Amend. Compl. ¶ 8-9.)  Neptun Light, Inc. ("Neptun"), a company

owned by Bobel, manufactures and sells lighting products utilizing the '480 Patent.  (*Id.* ¶ 9.)

Bobel alleges that MaxLite infringes the '480 Patent by its use and sale of compact fluorescent

lamps ("CFLs") that embody all of the elements of claim 9 of the '480 Patent .  (*Id.* ¶¶ 11-17.)

MaxLite's sole supplier of dimmable CFLs since 2008 has been Lux, who orders them

from a Chinese manufacturer, Shanghai Chuan Shih Technical Corporation.  (Undisputed Facts

¶¶ 15, 21, 24-35.)[2]  Michael Moison ("Moison") has owned more than 50% of the voting shares

in Lux since it incorporated on January 11, 2002.  (*Id.* ¶ 13; Supp. Moison Aff. ¶ 4.)  On

September 1, 2010, Moison and Tele-Cons Inc., a manufacturer of CFLs, filed a lawsuit in the

Eastern District of Texas alleging that Neptun infringed Moison's U.S. Patent No. 5,955,841 (the

"Moison Patent").  (Undisputed Facts ¶ 7.)  On November 8, 2010, Bobel filed a lawsuit in the

district court for the District of Columbia alleging that the Moison Patent was invalid based on

priority of inventorship.  (*Id.* ¶ 8.)  In February 2011, Neptun, Bobel and Moison entered into a

settlement agreement and mutual release regarding the two pending lawsuits ("Moison

Settlement Agreement").  (*Id.* ¶ 9.)  Among other things, the Moison Settlement Agreement

included a covenant not to sue (the "Covenant Not to Sue") executed by Neptun and Bobel.  (*Id.*

¶ 12; R. 21-1, Set. Ag. ¶ 3.2.)

---

[2] The Court refers to undisputed facts from MaxLite's 56.1 Statement of Uncontested
Facts (R. 21) and Bobel's response to those facts (R. 36) as Undisputed Facts.

On January 23, 2012, Bobel and Neptun filed a complaint with the International Trade Commission ("ITC") against MaxLite and other parties to remedy the allegedly unlawful importation into the United States and/or the sale within the United States after importation of MaxLite's CFLs that allegedly infringe the '480 Patent. (Amend. Compl. ¶ 18.) On June 15, 2012, MaxLite filed a Motion to Terminate the ITC Investigation as to MaxLite by entry of a Consent Order. (*Id*. ¶ 20.) On December 14, 2012, Bobel filed a First Amended Complaint in this case alleging that MaxLite directly and indirectly infringed the '480 Patent.

## SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine dispute as to any material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248, 106 S. Ct. 2505, 2510, 91 L. Ed. 2d 202 (1986). In determining summary judgment motions, "facts must be viewed in the light most favorable to the nonmoving party only if there is a 'genuine' dispute as to those facts." *Scott v. Harris*, 550 U.S. 372, 380, 127 S. Ct. 1769, 167 L. Ed. 2d 686 (2007). The party seeking summary judgment has the burden of establishing that there is no genuine dispute as to any material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986). After "a properly supported motion for summary judgment is made, the adverse party 'must set forth specific facts showing that there is a genuine issue for trial.'" *Anderson*, 477 U.S. at 255 (quotation omitted). "[D]istrict courts presiding over summary judgment proceedings may not weigh conflicting evidence or make credibility determinations, both of which are the province of the jury." *Omnicare, Inc. v. UnitedHealth*

6

*Grp., Inc.*, 629 F.3d 697, 704-05 (7th Cir. 2011) (internal citations omitted).

## ANALYSIS

MaxLite seeks partial summary judgment in its favor on Counts I and II as they pertain to MaxLite's purchase of dimmable CFLs from Lux. (R. 20, Sum. Jgmt. Mem. at 13.) Specifically, MaxLite argues that the doctrine of patent exhaustion bars Bobel from bringing suit against MaxLite for products purchased from Lux and that a convent not to sue protects MaxLite from prosecution. The Court agrees.

## I. MaxLite Purchased CFLs In an Authorized Sale Under the Doctrine of Patent Exhaustion

"The longstanding doctrine of patent exhaustion provides that the initial authorized sale of a patented item terminates all patent rights to that item." *Quanta Computer, Inc. v. LG Elecs, Inc.*, 553 U.S. 617, 625, 128 S. Ct. 2109, 170 L. Ed. 2d 996 (2008). MaxLite argues that the doctrine of patent exhaustion prevents Bobel from asserting that MaxLite infringed its patent because MaxLite purchased its CFLs from Lux in an authorized sale. (Sum. Jgmt. Mem. at 9-12.) Specifically, MaxLite argues that a covenant not to sue that Bobel entered into with third-parties authorizes Lux to sell the CFLs. Indeed, the Federal Circuit has held that a product sold under a covenant not to sue constitutes an authorized sale under the patent exhaustion doctrine. *See Transcore, LP and TC License, LTD. v. Elec. Trans. Consultants Corp.*, 563 F.3d 1271, 1276 (Fed. Cir. 2009).[3]

---

[3] Bobel argues that *Transcore* does not apply here because the Moison Settlement Agreement is not unconditional. (R. 35, Pl.'s Sum. Jgmt. Resp. at 20.) Bobel argues, without legal citation, that the existence of provisions disclaiming implied licenses and third-party beneficiaries removes MaxLite from its protection, even though, as discussed below, the plain language of the Moison Settlement Agreement and the Covenant Not to Sue indicates that the Covenant not to Sue covers Lux and, consequently, MaxLite. (*See* R. 21-1, Set. Ag. ¶¶ 3.2, 12.4,

MaxLite argues that the Covenant Not to Sue executed by Neptun and Bobel as part of the Moison Settlement Agreement covers sales from Lux to MaxLite because Lux constitutes an "Affiliate" under the Covenant Not to Sue, and therefore Bobel cannot sue MaxLite for its purchases from Lux. (R. 20, Sum. Jgmt. Mem. at 2-3.) The Covenant Not to Sue provides:



(R. 21-1, Set. Ag. ¶ 3.2 (emphasis added).) The Moison Settlement Agreement defines ▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ (*Id*. ¶ 1.3.) The Moison Settlement Agreement further defines ▮▮▮▮▮▮▮▮▮▮▮▮

12.5.) The court in *Transcore*, however, found that "the parties' intent with respect to *downstream* customers is of no moment in a patent exhaustion analysis." 563 F.3d at 1275 (citing *Quanta*, 128 S. Ct at 2122 ("But the question whether third parties received implied license is irrelevant because [the downstream customer] asserts its right to practice the patents based not on implied license but on exhaustion. And exhaustion turns only on [licensee's] own license to sell products practicing [licensor's] Patents."). Moreover, *Transcore* evaluated whether the settlement agreement at issue limited making, using, offering for sale, selling or importing. *Id*. at 1276. Despite arguing that the Moison Settlement Agreement is not unconditional, Bobel has not cited to any limitation on the making, using, offering for sale, selling or importing CFLs as might undercut MaxLite's reliance on *Transcore*. *See id*. at 1277 (finding that inclusion of language disclaiming express or implied licenses did not require a different result).

(*Id.* ¶ 1.1.) Moison has owned more than 50% of the voting shares in Lux since Lux

incorporated on January 11, 2002. (Undisputed Facts ¶ 13; Supp. Moison Aff. ¶ 4.) Lux,

therefore, qualifies as an "Affiliate" under the Settlement Agreement. Additionally, "Telecons,"

as used in the Covenant not to Sue, includes Lux as an Affiliate of Moison. As a result, MaxLite

qualifies as a "purchaser" under the Covenant Not to Sue because there is no genuine issue of

fact as to whether MaxLite purchased dimmable CFLs from Lux.

As discussed above, Bobel fails to sufficiently dispute MaxLite's assertions that it

purchased CFLs from Lux. Indeed, MaxLite submitted an uncontested declaration from Todd

Kim, General Manager of MaxLite, stating that MaxLite has purchased dimmable CFLs

exclusively from Lux since August 25, 2008. (R. 21-3, Kim Decl. ¶¶ 2-3; *see also* Undisputed

Facts ¶ 21.) Furthermore, MaxLite also submitted undisputed invoices evidencing purchases

from Lux. (*See e.g,*, R. 21, Def.'s 56.1 Facts, Exs. D, E, F, G, H, I.)[4] Bobel argues that

MaxLite's evidence is insufficient as it does not show that "all of MaxLite's alleged purchases

are actually made through Lux." (Pl.'s Sum. Jgmt. Resp. at 15.) MaxLite does not need to

establish that it has purchased every CFL from Lux as "[a]lleged purchases from suppliers

outside of Lux are not the subject of the present motion." (R. 48, Def.'s Reply at 12.) Indeed,

MaxLite only moves for partial summary judgment on "Plaintiffs' claims as they pertain to

MaxLite's purchase of dimmable CFLs from Lux." (Sum. Jgmt. Mem. at 13.) Based on the

---

[4] Bobel argues that MaxLite's Exhibits A and D through I lack authentication and are hearsay. (Pl.'s Sum. Jgmt. Resp. at 3-4.) The Court finds this argument misguided. First, Bobel signed Exhibit A and produced it to MaxLite as part of this litigation. (*See* Def.'s 56.1 Facts, Ex. A at 2; Def.'s Reply at 2.) Moreover, MaxLite provided a supplemental affidavit from Moison authenticating the records, which MaxLite keeps in the ordinary course of its business, and which Bobel also relied upon in its response. (*See* R. 41-1, Def's Reply, Ex. K, Moison Supp. Aff.; R. 48-2, Ex. L, Kim Supp. Aff.; Pl.'s Sum. Jgmt. Resp at 7, 11, 12, 20.)

undisputed facts and the terms of the Covenant Not to Sue, therefore, MaxLite constitutes an authorized purchaser of CFLs under the doctrine of patent exhaustion with regards to those CFLs purchased from Lux.

## II.    MaxLite's Representations To the ITC Do Not Preclude Its Exhaustion Defense

Bobel argues that the Court should judicially estop MaxLite from relying on the doctrine of patent exhaustion based on (1) MaxLite's representations to the ITC when it entered its Consent Order, and (2) MaxLite's representations when importing CFLs into the United States. (Pl.'s Sum. Jgmt. Resp. at 4-5.)

Under judicial estoppel, "[w]hen a party assumes a certain position in a legal proceeding, and succeeds in maintaining that position, he may not thereafter, simply because his interests have changed, assume a contrary position." *New Hampshire v. Maine,* 532 U.S. 742, 749, 121 S. Ct. 1808, 149 L. Ed. 2d 968 (2001) (citing *Davis v. Wakelee,* 156 U.S. 680, 689, 15 S. Ct. 555, 39 L. Ed. 578 (1895)).  Bobel argues that MaxLite obtained a Consent Order from the ITC by representing that it did not have an express or implied license defense and therefore the Court should not allow MaxLite to assert such a defense in this suit.  (Pl.'s Sum. Jgmt. Resp. at 8-10.)

MaxLite concedes that it did allege an express or implied license defense in the ITC proceeding, which stated:

### Express or Implied License

Complainants' claims are barred pursuant to an express or implied license.  Upon information and belief, this license is in the form of a contract, covenant not to sue, or other agreement among one or more of the Complainants, Michael Moisin, Tele-Cons, Inc., and Lux Electronic Products, Inc.

(Def.'s Reply at 4.)   Additionally, according to Bobel, in MaxLite's initial motion to terminate the ITC investigation, MaxLite attempted to carve out an exception for CFLs MaxLite purchased

from Moison, Tele-Cons, Inc., or Lux. (Pl.'s Sum. Jgmt. at 8.) The ITC denied this motion and found that MaxLite's proposal failed to provide the complainants with all the relief to which they would otherwise be entitled. (*Id.* citing (R. 35-4, Fuisz Decl. Ex. B at 4).) Furthermore, the administrative law judge stated that Maxlite failed to provide sufficient evidence that Moison, Tele-Cons, Inc., and Lux are licensed sellers.[5] (*Id.*) MaxLite then removed the carve-out and informed Bobel that it was not moving to terminate on the basis of a licensing agreement and the administrative law judge approved the revised Consent Order. (*Id.* at 9.) Bobel argues that MaxLite cannot now rely upon the license defense which it expressly disclaimed in order to obtain the Consent Order. (*Id.* at 10.)

Bobel, however, mischaracterizes the position MaxLite asserted in the ITC proceedings. Specifically, in its motion to terminate the proceedings, MaxLite represented to the ITC that "[t]here are no agreements, written or oral, express or implied, between the parties concerning the subject matter of this investigation." (*Id.* at 8; R. 21-10, Ex. J, Consent Order, at 10 ¶ 12.) Contrary to Bobel's contention, this statement was entirely accurate and has no bearing on the defense MaxLite now asserts as MaxLite seeks protection under an agreement between Bobel, Tele-cons, and Moison, not "between the parties" in the ITC investigation (Bobel and MaxLite). MaxLite never expressly disclaimed any defense under the Moison Settlement Agreement but instead correctly asserted that there were no agreements between it and Bobel and Neptun. This

---

[5] The administrative law judge denied MaxLite's initial motion to terminate for failing to comply with the conditions in Commission Rule 210.21(c)(3). (R. 35-4, Fuisz Decl. Ex. B at 5.) Although Bobel argues that MaxLite somehow acted improperly by moving for dismissal under Rule 210.21(c) rather than 210.21(b), the administrative law judge did not find any such error and did not deny MaxLite's motion for termination on such grounds. (Pl.'s Sum. Jgmt. at 10.) Bobel's speculation regarding why MaxLite did not move under rule 210.21(b) is therefore misguided and inapposite.

correctly asserted statement, which 19 C.F.R. § 210.21 requires in order to terminate an investigation, therefore, cannot support judicial estoppel.

Moreover, the ITC did not make a determination of the merits of the claims but rather "granted a right to exclude the importation and sale of products alleged to infringe the '480 Patent until such time that MaxLite demonstrates the invalidity, unenforceability, expiration, non-infringement or license of such products." (Def.'s Reply at 5 (citing Pl.'s Sum. Jgmt. Resp. at 9).) Indeed, under Commission Rule 210.21(c), a party initiates the process for a consent order by filing a motion to terminate "at any time prior to the issuance of an initial determination." 19 C.F.R. § 210.21(c). A consent order came before any determination on the merits. MaxLite, therefore, did not waive any license defense and the Court will not collaterally or judicially estop it from now challenging the enforceability of the '480 Patent against its sales, under patent exhaustion or otherwise.

Bobel also argues that MaxLite cannot claim that it purchases CFLs from Lux, rather than Chinese manufacturer Shanghai Chuan Shih ("Shanghai"), because MaxLite's import forms indicate that it purchases directly from Shanghai.. (Pl.'s Sum. Jgmt. Resp. at 11-13.) Specifically, Bobel argues that "[u]pon entry of product into the United States, Maxlite was legally required to identify the manufacturer of the product and to pay the U.S. Government import duties" and that MaxLite identified Shanghai. (*Id*. at 11.) Bobel, however, provides no legal citation for the proposition that MaxLite had an obligation to make certain disclosures to the Department of Homeland Security. Additionally, Bobel does not offer any declaration to this effect or provide any document where MaxLite stated on its face that Shanghai manufactured the imported products. Rather, Bobel compares prices and amounts listed on various custom forms,

without explanation as to the forms' purposes, uses or requirements, to support its claim that MaxLite purchases directly from Shanghai. Moreover, at most, Bobel's document comparison shows that MaxLite listed on its custom forms the price Lux paid to Shanghai rather than the price it paid to Lux. This would not, however, establish that MaxLite directly purchased the lights from Shanghai as the instructions for the cited customs forms allow MaxLite to list the price paid by Lux for the products in this multi-tiered transaction. (*See* Def.'s Reply at 9.) Bobel's unsupported allegations, therefore, do not raise an issue of fact, particularly because, as discussed above, the undisputed factual record at this stage shows that MaxLite did purchase dimmable CFLs from Lux, which orders the CFLs from Shanghai who manufactures them. Consequently, Bobel has not developed any argument to undercut MaxLite's patent exhaustion defense as to the dimmable CFLs purchased from Lux.

### III. The Covenant Not to Sue Bars Bobel's Claims Against MaxLite Relating to MaxLite's Purchase of CFLs from Lux

MaxLite also argues that terms of the Covenant Not to Sue directly bar Bobel from bringing infringement claims against MaxLite for its purchase of dimmable CFLs from Lux. In the Covenant Not to Sue, Bobel agreed ████████████████████████████████████ ████████████████████████████████████████████ ████████████████████████████████████ (R. 21-1, Set. Ag. ¶ 3.2.) As discussed above, MaxLite is a purchaser of Telecons' CFLs because MaxLite purchased CFLs from Lux, a company owned by Moison, an Affiliate. Furthermore, the Covenant Not to Sue does not place any restrictions on Moisin or Tele-Cons from using or selling products that infringe the '480 Patent. Under the Covenant Not to Sue, ██████████████████████ ████████████████████ Bobel's present infringement claims against MaxLite,

13

therefore, violate the terms of the Covenant Not to Sue to the extent they implicate Bobel's

purchases from Lux.

Bobel contends that MaxLite fails to "establish that at the time of each alleged sale by

Lux that Lux would have come within the definition of Affiliate," noting that Moison's initial

declaration did not include a timeframe.  (Pl.'s Sum. Jgmt. Resp. at 14.)  Moison's uncontested

supplemental affidavit, however, establishes that Lux has only existed since January 11, 2002.

(Moison Supp. Aff. ¶ 2.)  Moreover, the Covenant Not to Sue covers claims███████████

████████████████████████████████████████████████████████████████████

█████████████████████████therefore, the date is immaterial.  (R. 21-1, Set. Ag. ¶ 3.2.)

## CONCLUSION

For the foregoing reasons, the Court grants Defendant MaxLite's motion for partial

summary judgment on Counts I and II as they pertain to MaxLite's purchase of dimmable CFL's

from Lux.[6]

**DATED: January 11, 2013**                    **ENTERED**

                                                              AMY J. ST EVE
                                                              United States District Court Judge

_____

[6] MaxLite also seeks a "finding that Plaintiff's actions in bringing this action against MaxLite having knowledge that the Covenant Not to Sue covered transactions between MaxLite and Lux makes this case extraordinary and therefore awarding MaxLite's attorney's fees." (Sum. Jgmt. Mem. at 13.)  MaxLite fails, however, to offer any legal citation supporting its brief argument that Bobel should pay attorneys fees because it was aware that the Covenant Not to Sue covered products MaxLite purchased from Lux.  The Court, therefore, does not address this undeveloped argument.